( Not for publication)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

_____
                                         :
DONNA L. COLON,                          :
                                         :
                        Plaintiff,       :        Civil No. 05-5564 (RBK)
                                         :
        v.                               :        **OPINION**
                                         :
JO ANNE B. BARNHART,                     :
Commissioner of Social Security Administration, :
                                         :
                        Defendant.       :
_____  :

**KUGLER**, United States District Judge:

        This matter comes before the Court upon appeal by Plaintiff Donna L. Colon ("Colon"),

pursuant to 42 U.S.C. § 405(g), for review of a final determination of the Commissioner of

Social Security ("Commissioner") denying her application for disability insurance benefits

("DIB") and Supplemental Security Income ("SSI").  For the reasons set forth below, the

decision of the Commissioner will be affirmed.

**I.  BACKGROUND**

        Colon, a forty-five year old woman with an eleventh grade education, filed applications

on January 27, 2003 for DIB under Title II of the Social Security Act ("the Act") and SSI under

Title XVI of the Act, alleging disability since September 18, 2002 due to Chronic Obstructive

Pulmonary Disease ("COPD"), chronic hepatitis C, and Emphysema. (Rec. 77.)  Colon's work

history includes working as a cashier at a convenience store and as a nursing assistant at a

nursing home.  (Rec. 78.)  Colon alleges that she is unable to continue her previous work because

1

she cannot stand for long periods of time and she experiences shortness of breath and frequent

headaches.  (Rec. 77.)

### A. Chronic Obstructive Pulmonary Disease

Peter Kuponiyi, the consultative examiner for SSA, performed pulmonary functioning

studies on March 26, 2003 (Rec. 235-45.)  Colon underwent further testing at Newcomb Hospital

on September 16, 2003. (Rec. 357-60.)  On both occasions, Colon showed severe pulmonary

dysfunction.  The March 26, 2003 pulmonary function test revealed an FEV-1[1] of 1.16. (Rec.

236.)  Based on Colon's height, this is 0.01 over the less than or equal to 1.15 requirement set

forth in Listing of Impairments § 3.02[2] ("Listing") that indicates severe conditions.  When tested

at Newcomb Hospital in September 2003, Colon's prebronchodilator level decreased to 0.93.

(Rec. 357-60.)  With medication, Colon improved to 1.23, 0.08 greater than the measurement

required by the Listings.  (Rec. 367-60.)

### B.  Emphysema and Lung Conditions

During the March 26, 2003 consultative examination, Colon reported that she had been

diagnosed with emphysema in August 2002, but was never intubated.  (Rec. 235.)  The

---

[1]      Forced Expiratory Volume ("FEV") measures how much air a person can exhale
during a forced breath. The amount of air exhaled may be measured during the first ($FEV_1$),
second ($FEV_2$), and/or third seconds ($FEV_3$) of the forced breath.  *A to Z Health Guide from
WebMD*, http://www.webmd.com/hw/health_guide_atoz/aa73564.asp. (last visited Sept. 26,
2006).

[2]      The purpose of the Listing of Impairments is established in 20 C.F.R.
§404.1525(a).  The Listing describes impairments for each of the major body systems that are
considered severe enough to prevent an individual from doing any gainful activity, regardless of
his or her age, education, or work experience. *Id*.

pulmonary function study was consistent with severe obstructive lung disease.  (Rec. 235-37.)

Colon testified that her normal activities were limited due to shortness of breath (Rec. 40), and at

times, it felt like there was a pillow over her face (Rec 34).  Treatment records indicate that

Colon continued to smoke cigarettes despite her breathing deficiencies.  (Rec. 220, 366.)  She

testified that she smoked a pack a day, but stopped smoking six months ago.  (Rec. 34.)  Records

from Colon's treating physician in April 2004 note that she requested medication to help her stop

smoking.  (Rec. 366.)  Colon stated that she had a nebulizer and an inhaler that she used for her

breathing problems.  (Rec. 39.)  She further testified that she experienced shortness of breath

from minor activities, and could only walk an estimated twenty- to-twenty-five feet before she

was short of breath.  (Rec. 41.)

### C. Chronic Hepatitis C

Colon was diagnosed with hepatitis C in 1991 while under the care of Dr. Werbitt.  (Rec.

195.)  Colon was advised to abstain from all illicit drugs and alcohol.  (Rec. 195.)  During a

hospitalization for pneumonia in October 1995, she reported that she had not used intravenous

drugs in many years, but admitted that she continued to drink heavily about once a month.  (Rec.

172-73.)

Colon reported that joints and knees were routinely swollen and that she had spots on her

legs that she attributed to the hepatitis that was untreated for the past ten years. In 2003, Colon

sought treatment for hepatitis from Dr. Woo Kwang Song, a gastroenterologist.  Dr. Song placed

Colon on Interferon treatments for roughly six months, which Colon completed in September

2003.  (Rec. 363.)  Colon testified that the treatment caused depression and that she stopped

seeing Dr. Song following completion of the treatment because she no longer had adequate

3

insurance coverage.  (Rec. 36-37.)  Dr. Song attributed the depression to the Interferon treatment, but did not recommend specific mental health treatment.

Colon reported that she continues to be treated by her family physician, Dr. Morteson. Dr. Morteson's notes from December 2004 indicate that she prescribed Lexapro for treatment of depression and anxiety. (Rec. 366.)  There was no evidence that Dr. Morteson referred Colon for specialized mental heath treatment.  Since September 2003, Colon was treated exclusively by Dr. Morteson.  She testified that her condition improved since completion of the prescribed treatment.  (Rec. 36.)

### D. Other Ailments

Colon's medical history also indicates other medical conditions including a possible history of hypoglycemia (Rec. 235), tobacco abuse, a history of alcohol abuse prior to 1991 (Rec. 247), an anxiety disorder with depression occurring throughout the past ten years (Rec. 246-47), and headaches (Rec. 236).

According to Colon, she was diagnosed with hypoglycemia in 2003 after being treated by her physician for bouts of dizziness.  (Rec. 235.)  Her doctor diagnosed her with hypoglycemia, but she did not pursue any particular course of treatment.  (Rec. 235.) According to the agency evaluation contained in the record, this condition would require additional evaluation by her treating physician. (Rec. 235.)

In June 2003, Dr. Davenport diagnosed Colon with major depressive disorder, of mild severity, and recommended that she continue the medication that her treating physician prescribed, which included Celexa and Ambien.

Colon indicated that she experiences headaches two to three times per week, and that her

last emergency room visit for headache complaints was around September 2002.  (Rec. 236.) The

emergency room physician informed Colon that she had migraine-type headaches, for which she

currently takes Toradol.  (Rec. 236.)

### E. Residual Functioning Capacity Assessment

On March 20, 2003, Dr. Walsh completed a Residual Functional Capacity ("RFC")

Assessment stating that Colon could occasionally lift and/or carry up to twenty pounds,

frequently lift and/or carry up to ten pounds, stand and/or walk for an estimated six hours in an

eight-hour work day, and sit for approximately six hours in an eight-hour work day.  (Rec. 159.)

In addition, Dr. Walsh stated that Colon has an unlimited ability to push and pull.  (Rec. 159.)

Dr. Walsh determined that Colon could occasionally climb ramps, stairs, ladders, ropes and

scaffolds. (Rec. 160.) Dr. Walsh also found that Colon could occasionally balance, stoop, kneel,

crouch and crawl.  (Rec. 160.) Dr. Walsh further reported that Colon had an unlimited ability to

reach in all directions, and was unlimited in handling, fingering and feeling objects. (Rec. 161.)

Colon had no visual limitations. (Rec. 161.) Dr. Walsh noted that Colon should avoid

concentrated exposure to fumes, odors, dust, gas, and poor ventilation. (Rec. 162.) Dr. Walsh

issued a primary diagnosis of asthma.  (Rec. 158.) Dr. Walsh stated that the treating/examining

source's conclusions about Shaw's limitations were not significantly different from his findings.

(Rec. 164.)

Although Dr. Walsh concluded that his findings were not different from the treating

physician's findings, a general medical report from Dr. Morteson dated February 19, 2003

contained different conclusions than those rendered by Dr. Walsh.  In particular, Dr. Morteson

concluded that Colon had no limitation on her ability to lift, carry, stand, walk or sit.  (Rec. 221.)

Dr. Morteson also diagnosed Colon with chronic hepatitis C. (Rec. 221.) Finally, Dr. Morteson noted that the only condition that could limit Colon's ability to do work-related activities was anxiety.  (Rec. 221.)

### F. Administrative Law Judge Decision

Colon filed initial applications for DIB and SSI on January 27, 2003.  The SSA denied Colon's claim and Colon filed a timely request for a hearing in front of an Administrative Law Judge ("ALJ").  After holding a hearing on December 14, 2004, ALJ Daniel L. Rubini issued a decision on January 27, 2005 denying Colon's claim.  On October 20, 2005, Colon appealed the decision to the Appeals Council, which issued a Notice of Appeals Council Action and denied further review.  At that time, the ALJ's decision became the final decision of the Commissioner.

In his decision, the ALJ concluded that Colon was entitled to neither DIB nor SSI under Sections 216(i), 223, 1602, and 1614(a)(3)(A) respectively, of the Act.  The ALJ concluded, inter alia, that Colon was last insured for Disability under Title II on March 31, 2003 and has not engaged in substantial work activity since the onset of the disability.  Moreover, the ALJ found that Colon had a severe impairment due to COPD and Hepatitis C, but did not have a condition that met or equaled the level of severity of the Listings.  (Rec. 16-17.)

In assessing Colon's RFC, the ALJ reviewed the medical record, as well as the testimony offered at the hearing.  The ALJ determined that although Colon had valid impairments that may result in the symptoms described by Colon, the ALJ did not believe that Colon's assertions regarding the severity of her impairments and limitations were completely credible when compared to the evidence as a whole.  (Rec. 17.) In light of these findings, the ALJ concluded that Colon's past relevant work history did not require the performance of work-related activities

6

precluded by her RFC, and that Colon's medically determinable COPD, asthma, hepatitis C, depression and history of substance abuse would not prevent her from performing her past relevant work.  (Rec 17.)

## II. STANDARD OF REVIEW

District Court review of the Commissioner's final decision is limited to ascertaining whether the decision is supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)).  Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Morales v. Apfel, 225 F.3d 301, 316 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 422 (3d Cir. 1999)).  If the Commissioner's determination is supported by substantial evidence, the Court may not set aside the decision, even if the Court "would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (citing Hartranft, 181 F.3d at 360); see also Williams v. Sullivan, 970 F.3d 1178, 1182 (3d Cir. 1992) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984) ("A district court may not weigh the evidence or substitute its conclusions for those of the fact finder.")

Nevertheless, the reviewing court must be wary of treating "the existence [or not] of substantial evidence as merely a quantitative exercise" or as "a talismanic or self-executing formula for adjudication." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.")  The Court must set aside the Commissioner's decision if the Commissioner did not take into account the entire record or failed to resolve an evidentiary conflict. Schonewolf v. Callahan, 972 F. Supp. 277,

284-85 (D.N.J. 1997) (citing <u>Gober v. Matthews</u>, 574 F.2d 772, 776 (3d Cir. 1978)).

Furthermore, evidence is not substantial if "it constitutes not evidence but mere conclusion," or if

the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." <u>Wallace v.</u>

<u>Sec'y of Health & Human Servs.</u>, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing <u>Kent</u>, 710 F.2d at

114).

## III. DISCUSSION

The Commissioner conducts a five-step inquiry to determine whether a claimant is

disabled. 20 C.F.R. § 404.1530; <u>Jones v. Barnhart</u>, 364 F.3d 501, 503 (3d Cir. 2004). The

Commissioner first evaluates whether the claimant is currently engaging in a "substantial gainful

activity." Such activity bars the receipt of benefits. 20 C.F.R. § 404.1520(a). The Commissioner

then ascertains whether the claimant is suffering from a severe impairment, meaning "any

impairment or combination of impairments which significantly limits [the claimant's] physical or

mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

If the Commissioner finds that the claimant's condition is severe, the Commissioner

evaluates whether it meets or equals a listed impairment. 20 C.F.R. § 404.1520(d). If the

condition is equivalent to a listed impairment, the claimant is entitled to benefits; if not, the

Commissioner continues to step four to evaluate the claimant's RFC and determine whether the

RFC would entitle the claimant to return to her "past relevant work." 20 C.F.R. § 404.1520(e).

The ability to return to past relevant work precludes a finding of disability. Past relevant

work is defined as work that the claimant did within the past fifteen years, that was a

substantially gainful activity, and that lasted long enough for claimant to learn how to perform

the work. 20 C.F.R. § 404.1560(b)(1). If the Commissioner finds the claimant unable to resume

past relevant work, the burden shifts to the Commissioner to demonstrate the claimant's capacity to perform work available "in significant numbers in the national economy." Jones, 364 F.3d at 503 (citing 20 C.F.R. § 404.1520(f)).  An ALJ is permitted to consult the opinion of a vocational expert to determine whether the claimant can perform his or her past relevant work or perform any type of work that is available in the national economy. 20 C.F.R. § 404.1560(b)(2).

Here, Colon argues that 1) the decision of the ALJ that Colon has no severe psychological impairment is not supported by substantial evidence; 2) the decision of the ALJ as to Colon's RFC is not supported by substantial evidence; and 3) the conclusion of the ALJ that Colon lacked credibility is not supported by an adequate rationale or substantial evidence.  The Court will address these arguments in turn.

**A. The Decision of the ALJ as to Colon's Psychological Impairment**

One of Colon's primary arguments is that the ALJ did not offer a sufficient explanation as to why he found that Colon's depression was not severe within the meaning of Step Two of the sequential process described above.  A severe impairment is one that limits an individual's physical or mental ability to do basic work activities.[3]  20 C.F.R. §§404.1520(c), 416.920(c).

---

[3]     According to 20 C.F.R. §404.1521(b), "basic work activities" refer to the abilities and aptitudes necessary to do most jobs.  Examples include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

If there is not an impairment or combination of impairments that significantly limits one's physical or mental ability to do basic work activities, the court will find the individual does not have a severe impairment and therefore is not disabled.  Id.  Like physical impairments, a psychological disorder is not necessarily disabling unless there is a showing of related functional loss.  See Meton v. Sec'y of Health & Human Servs., 737 F. Supp. 867, 870 n.3 (E.D. Pa. 1990) (citing Sitar v. Schweiker, 671 F.2d 19, 20 (1st Cir. 1982)).

Colon asserts that the only explanation provided by the ALJ was that Colon was treated solely by her family doctor.  As a result, Colon claims that the ALJ erred by "conflating a lack of treatment of a psychiatric impairment for a lack of severity of the impairment." (Pl. Brief 17.)

Despite these arguments, there is substantial evidence in the record to support the ALJ's findings as to Colon's psychological impairments and their effect on her ability to perform work-related activities.  As a preliminary matter, the ALJ recognized Colon's complaints regarding a ten-year history of anxiety and depression.  (Rec. 13.)  Further, the ALJ noted that Colon's treating physician prescribed medication for depression, but that there was no evidence of treatment by a psychiatrist or psychologist.  (Rec. 13.)  The ALJ also recognized the findings of the reviewing state agency psychologist regarding Colon's major depression, but emphasized that the condition was of mild severity.  (Rec. 14.)

The ALJ found that Colon's treating physician, Dr. Morteson, did not mention any particular limitations associated with her depression.  (Rec. 14.)  Colon argues that Dr. Morteson limited Colon's abilities to do work-related activities due to anxiety.  (Rec. 221.)  However, the ALJ correctly concluded that Dr. Morteson did not mention any "particular" limitations associated with depression.  (Rec. 14.)  Thus, the ALJ was correct in looking to the remaining

record in its entirety to determine if Colon's psychological impairment was severe within the meaning of the applicable regulations.

Colon's assertion that the primary reason offered by the ALJ as to why Colon's psychological condition was not severe was because she was not treated by a psychologist or psychologist is inaccurate.  The ALJ considered the records of Colon's family doctor, the records of the gastroenterologist who treated Colon's hepatitis, and the records of the state agency psychologist.  The findings noted in these records support the ALJ's conclusion that Colon's impairment was not severe within the meaning of the regulations.

An ALJ can reject a treating physician's opinion outright based upon contradictory medical evidence, and may afford a treating physician's opinion more or less weight depending upon the extent to which that physician presents explanations to support his or her opinion. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (citing Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985)).  In other words, the Commissioner will give controlling weight to a treating source's opinion on the severity of the claimant's impairments only when that opinion is well-supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527 (d)(2) (emphasis added).

Regarding Dr. Morteson's reports, there is nothing in the record that points to any specific limitations on Colon's ability to do work-related activities.  Although Dr. Morteson notes that Colon's anxiety could limit her ability to work, there are no specific limitations listed that could outweigh the abundant medical evidence contained in the record that indicates that Colon is not limited in her ability to engage in work-related activities.  Despite the fact that Dr. Morteson

prescribed anti-depressants, Colon testified that the medication alleviated her depression and anxiety.  (Rec. 38.)  See Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983) (finding that a symptom that can be reasonably controlled by medication or treatment is not disabling).  Since Dr. Morteson failed to elaborate on the nature of the limitations caused by Colon's anxiety, the ALJ properly deferred to the contradictory medical evidence contained in the record.

The ALJ referred to Karen Davenport's consultative report from Colon's June 3, 2003 evaluation and noted that Colon reported only mild symptoms of depression.  (Rec. 14.) Specifically, the ALJ emphasized that on examination, Colon's thought processes were coherent and goal-directed, with no evidence of hallucinations, delusions, or paranoia.  (Rec. 14.)  Further, Colon's memory, attention and concentration were only mildly impaired.  (Rec. 14.) The ALJ also noted that during the examination, Colon reported that she can perform all activities of daily living, and that her activity was only slowed by her breathing problems.  (Rec. 14.) Colon also stated that she plays bingo twice a week, and takes care of her nine-year-old son and the household.  (Rec. 14.)

The ALJ also relied on Dr. Song's reports that attributed Colon's depression to her interferon treatment for hepatitis.  (Rec. 14.)  Dr. Song did not refer Colon to a psychiatrist or psychologist and did not make any further recommendations regarding mental health treatment. (Rec 14.)

Finally, the ALJ referred to the state agency psychologist consultative examination.  The ALJ pointed to the agency psychologist's conclusions that Colon had no limitation in her social functioning, and only mild limitation in maintaining concentration, persistence, or pace.  In addition, the ALJ found no evidence of the "C" criteria contained in the reviewing psychologist's

report.  (Rec. 14, 144.)  The psychologist concluded that Colon's depression was not a severe impairment.  The ALJ correctly determined that the state agency report was consistent with the evidence as a whole, and was not contradicted by the findings of any treating physician.[4]  (Rec. 14.)

In sum, the ALJ found that Colon received no specialized treatment for psychological impairments at any point during the alleged ten years that the condition existed, and had only mild depression according to the findings of the examining psychologist.  Moreover, the ALJ found that the doctor who treated Colon's hepatitis advised that the depression was likely a side effect of the Interferon treatment, and all subsequent treatment was provided by her family physician.  The only evidence in the record that indicates a limitation in Colon's ability to do work-related activities was contained in one of Dr. Morteson's reports.  However, as explained above, Dr. Morteson did not specifically explain the extent of the limitation.  The ALJ could not possibly conclude from this general assertion that Colon's psychological impairment would significantly limit her physical and mental ability to do basic work activities, particularly after considering the contradictory evidence contained in the record.

Since the ALJ's decision explains that the record failed to establish a disabling psychological impairment, the Court finds that the ALJ's decision adequately addresses Colon's mental impairments. There is substantial evidence to support the ALJ's conclusion that Colon's psychological condition is not disabling.

---

[4]    The ALJ failed to address the fact that Dr. Morteson stated that Colon's anxiety could limit her ability to do work-related activities.  Although the ALJ only concluded that the treating physician did not mention any "particular" limitations, the ALJ should have discussed Dr. Morteson's conclusion when he stated that the state agency report was not contradicted by the findings of "any" treating physician.

13

**B.  The Decision of the ALJ as to Colon's Residual Functional Capacity**

Colon alleges that the ALJ's RFC determination that she retained the ability to perform

medium work despite her severe impairments is not supported by substantial evidence.  (Pl. Br.

20.)  RFC is defined in the Regulations as the most an individual can still do after considering the

effects of physical and/or mental limitations that affect the ability to perform work-related tasks

(20 CFR §§ 404.1545 and 416.945).  In determining the RFC, the ALJ must base the assessment

on relevant evidence such as medical history, laboratory findings, effects of treatment, reports of

daily activities, lay evidence, recorded observations, medical source statements, and effects of

symptoms. S.S.R. 96-8P (1996).

Here, the ALJ appropriately weighed all of the medical evidence in the record to find that

Colon had the RFC to perform "a full range of medium-level work." (Rec. 16.) The ALJ

explained that based on the evidence as a whole, Colon retains the ability to lift no more than

fifty pounds at a time, with frequent lifting or carrying of objects weighing up to twenty-five

pounds. (Rec. 16.)  The ALJ further concluded that Colon had no limitations in sitting, standing,

or walking throughout the workday.  (Rec. 16.)

While the ALJ concluded that the record indicated severe impairments of hepatitis and

COPD, he noted that none of Colon's treating physicians limited her work-related abilities in any

manner as a result of these impairments.  (Rec. 15-16.)[5]  The ALJ reviewed Dr. Morteson's

opinion that Colon could perform lifting, carrying, standing, walking, sitting, pushing and

---

[5]        Although Colon's treating physician, Dr. Morteson, reported that Colon's anxiety
could limit her work ability, the ALJ did not consider this condition severe.  In addition, as
previously explained, Dr. Morteson did not specify any particular limitations associated with the
anxiety.  Thus, the ALJ had no medical basis to include this alleged limitation in the RFC
analysis.

pulling, and had no other limitations.  (Rec. 16.)  Further, the ALJ noted that based on Dr. Song's

reports, there was no indication of any persistent or frequent symptoms or limitations associated

with Colon's hepatitis.

Objective medical findings contained in the record support the ALJ's findings regarding

Colon's RFC.  Dr. Song reported that Colon's liver enzymes were only mildly elevated with an

aspartate aminotransferase[6] ("AST") of 81 and an alanine aminotransferase[7] ("ALT") of 99, (Rec.

258) and further noted that they normalized with the Interferon treatment (Rec. 251-54).

Regarding Colon's COPD, Dr. Morteson reported that Colon had clear lungs and no wheezing

(Rec. 268, 272-73, 276, 278.)  In addition to these findings, consultative physician Dr. Peter

Kuponiyi found that Colon had a full range of motion of upper and lower extremities, no

problems with ambulation, and no swelling of any joints. (Rec. 236-37.)

Colon argues that the ALJ was "wildly inaccurate" in asserting that the results of the

pulmonary function tests were well above the levels in §3.02 of the Listings.  (Pl. Br. 19.)

Although Colon's March 2003  FEV-1 of 1.16 was only 0.01 over the 1.15 requirement of the

---

[6]      An AST test measures the amount of this enzyme in the blood. AST is normally found in red blood cells, liver, heart, muscle tissue, pancreas, and kidneys.  *A to Z Health Guide from WebMD: Medical Tests*, http://www.webmd.com/hw/liver_disease/hw20331.asp. (last visited Sept. 26, 2006).

[7]      An ALT test measures the amount of this enzyme in the blood.  ALT is measured to see if the liver is damaged or diseased. Low levels of ALT are normally found in the blood. However, when the liver is damaged or diseased, it releases ALT into the bloodstream, which makes ALT levels go up. Most increases in ALT levels are caused by liver damage.  *A to Z Health Guide from WebMD: Medical Tests*, http://www.webmd.com/hw/lab_tests/hw20645.asp. (last visited Sept. 26, 2006).

Listings, her September 2003 results changed to 1.23, increasing the difference to 0.08.  Whether or not this amounts to a number "well above" the levels of the Listings is a matter to which reasonable minds could differ.  Regardless, Colon's pulmonary function test results were above the requirements of the Listings and the ALJ had objective medical evidence to support the conclusion that Colon's impairments were not so severe as to prevent her from doing any gainful activity.

       As Colon correctly points out, the purpose of the Listings is only to describe conditions that are so severe that it is presumed no individual with such impairments could sustain even less than substantial gainful activity.  (Pl. Br. 19.)  Colon argues, with no legal authority, that an individual who suffers from impairments that are close to meeting the requirements of the Listings would be seriously limited in their ability to function.  This is an assumption that this Court is not willing to make, especially in light of the contradictory medical evidence that established no limitations in Colon's ability to perform work-related activities.  The ALJ followed the requirement of the regulations, which explains that if an individual's impairment does not meet or medically equal a listed impairment, the ALJ is required to consider the individual's RFC after examining the record as a whole.  20 C.F.R. §§ 404.1545, 416.945.

       The record is inconsistent with regard to Colon's ability to lift.  The RFC assessment completed by Dr. Walsh on May 20, 2003 limits Colon's ability to lift up to ten pounds frequently and twenty pounds occasionally.  (Rec. 159.)  However, Colon's treating physician, Dr. Morteson, reported on February 19, 2003 that Colon had no limitation on her ability to lift and carry  (Rec. 221.)  The ALJ was within his discretion to defer to the report of the treating

physician in rendering a decision as to RFC.[8]  When considering a claim for DIB, the ALJ generally affords greater weight to the findings of treating physicians as opposed to the findings of doctors who have only evaluated the claimant as a mere consultant. <u>Adorno v. Shalala</u>, 40 F.3d 43, 47-48 (3d Cir. 1994) (citing <u>Mason v. Shalala</u>, 994 F.2d 1058, 1067 (3d Cir. 1993)); <u>Wright v. Sullivan</u>, 900 F.2d 675, 683 (3d Cir. 1990).

Finally, Colon alleges that the ALJ did not consider the side effects of her Interferon treatment in assessing her RFC. (Pl. Br. 20.)  However, this is an inaccurate reading of the ALJ opinion, as the ALJ clearly addressed reports that Colon experienced depression as a result of the Interferon treatment.  Although, the ALJ did not conclude that this particular side effect would prevent Colon from performing work-related activities, the ALJ had no specific objective medical evidence to support such a determination.  Colon also criticizes the ALJ's finding that if Colon stops smoking it would help her respiratory condition. (Pl. Br. 20.)  However, the ALJ did not rely on this assertion, but simply stated what would seem to be common sense.

Accordingly, the Court finds that the ALJ's analysis of Colon's RFC is supported by substantial evidence and does not require a reversal or remand for further explanation.

**C. The Decision of the ALJ as to Colon's Credibility**

It is well established that "where medical evidence supports a claimant's complaints of pain, the complaints should be given 'great weight' and may not be disregarded unless there exists contrary medical evidence." <u>Claussen v. Chater</u>, 950 F. Supp. 1287, 1297 (D.N.J. 1996)

---

[8]     Where competent evidence supports a claimant's claims, the ALJ must explicitly weigh the evidence and explain a rejection of the evidence.  <u>Schaudeck v. Comm'r of Soc. Sec.</u>, 181 F.3d 429, 435 (3d Cir. 1999) (citing <u>Benton ex rel. Benton v. Bowen</u>, 820 F.2d 85, 88 (3d Cir. 1987)).  The ALJ's decision did not explain that he deferred to the opinion of the treating physician regarding Colon's ability to lift and carry.

(quoting Mason v. Shalala, 994 F.2d 1058, 1067-68 (3d Cir. 1993)). So long as there is "objective medical evidence of some condition that could reasonably produce pain, there need not be objective evidence of the pain itself." Green v. Schweiker, 749 F.2d 1066, 1071 (3d Cir. 1984) ("[P]ain must be considered, can be disabling in itself, and is often not subject to strict objective medical proof.")  It is well within the ALJ's discretion to assess credibility after carefully reviewing the record.  Woody v. Sec'y of Health and Human Servs., 859 F.2d 1156 (3d Cir. 1988).

However, before weighing the claimant's testimony, the ALJ must evaluate the claimant's credibility and "determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." Bembery v. Barnhart,  142 Fed. Appx. 588, 591 (3d Cir. 2005) (citing Hartranft v. Apfel, 181 F. 3d 358, 362 (3d Cir. 1999) (citing 20 C.F.R. § 404.1529(c))). To assess credibility, the ALJ may consider: "(1) daily activities; (2) duration, location, frequency, and intensity of the pain and other symptoms; (3) precipitating and aggravating factors; (4) medication taken to alleviate pain or other symptoms; (5) treatment other than medication; (6) any other measures used to relieve the symptoms; and (7) other factors concerning functional limitations or limitations due to pain or other symptoms." Caruso v. Comm'r of Soc. Sec., 99 Fed. Appx. 376, 380-81 (3d Cir. 2004) (citing 20 C.F.R. § 416.929(c)(3)(i)-(vii)); Bembery v. Barnhart, 142 Fed. Appx. 588, 591 (3d Cir. 2005) (affirming ALJ's credibility determination because claimant's "daily activities strongly conflict with her allegations of having totally disabling limitations and pain").

In this instance, the ALJ considered the subjective complaints of Colon based on her testimony at the hearing and the evidence contained in the medical reports of the record.

However, based on conflicting objective medical evidence, the ALJ rejected Colon's subjective symptomology.  As mentioned above, the law in the Third Circuit requires the presence of contrary objective medical evidence before an ALJ can reject the subjective complaints of a claimant.  Chater, 950 F. Supp. at 1297.  The ALJ met this burden by relying on the medical reports of Colon's treating doctors and the agency consultant.

Although the ALJ did not explicitly discuss the credibility issue, he referred to the body of his opinion as support for his contention that Colon's subjective complaints were not fully credible.  (Rec. 17.)  Colon argues that the ALJ failed to explain why Colon lacked credibility.  (Pl. Br. 23.)  However, looking to the body of the ALJ's opinion, the ALJ adequately set forth the objective evidence that he relied on in discrediting Colon's complaints.

Colon correctly notes that 20 C.F.R. § 404.1529 requires that one cannot be found to be disabled based on their symptoms, unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce those symptoms.  However, this would require medical findings to corroborate the alleged symptoms, not to contradict them.  Dorf v. Bowen, 794 F.2d 896 (3d Cir. 1986) (where a plaintiff testifies as to subjective complaints of pain, that testimony can be corroborated by a physician who has observed and treated the plaintiff over time).  Here, the record contains sufficient evidence from various doctors that contradicts Colon's subjective complaints, namely her treating physician's conclusions as to her lack of physical limitations.  (Rec. 221.)

As a preliminary matter, despite Colon's allegations of severely disabling pain, shortness of breath, and depression, her treating and examining physicians did not limit her in any particular manner.  Primarily, Dr. Morteson did not report any physical limitations regarding

19

Colon's ailments (Rec. 221) and nothing else contained in the record contradicts this finding.

Looking to the factors set forth in Caruso, the ALJ assessed Colon's daily activities. The ALJ noted that during the consultative examination, Colon stated that she can perform all activities of daily living. (Rec. 14.)  Colon also reported that she plays bingo twice a week, and takes care of her son and household on a daily basis. (Rec. 14.)  Colon asserts that an ALJ cannot reject medically supported subjective complaints of pain based solely on the fact that a plaintiff takes care of their personal needs and performs limited household chores. (Pl. Br. 22.) Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988).  Despite Colon's assertion, the ALJ did not solely rely on her daily activities to support his conclusions.  In contrast, he gave full consideration to medical reports of Colon's treating physicians, hospital records, reports from the state agency consultative examiner, as well as Colon's testimony at the hearing.

In Frankenfield, the court held that the ALJ could not completely ignore the findings of the claimant's treating physician and make a decision based solely on an observation of the claimant at the hearing and claimant's testimony that he took care of his personal needs, performed limited household chores and occasionally went to church.  Frankenfield, 861 F.2d at 408.  Colon's case is distinguishable from Frankenfield primarily because the ALJ did not base his decision solely on Colon's appearance or the fact that she maintains her home and child. Contrary to the ALJ in Frankenfield, ALJ Rubini mentioned these factors in conjunction with objective medical evidence supporting the ultimate conclusion that Colon's impairments did not prevent her from resuming her previous line of work. (Rec. 14.)  Primarily, ALJ Rubini's findings were supported by Colon's family doctor's reports that did not indicate specific physical limitations regarding Colon's impairments. (Rec. 221.)

20

The ALJ also mentioned Colon's continued smoking habit as a possible aggravating factor to her breathing problems.  (Rec. 15-16.)  Although the ALJ did not rely solely on this point in rendering his decision, a history of smoking is a relevant factor to weigh in assessing the credibility of a claimant alleging disabling breathing problems.  Additionally, the ALJ considered medication that Colon was prescribed for her impairments.  Specifically, the ALJ discussed Colon's Interferon treatment for hepatitis and the Celexa and Ambien that was prescribed by her family doctor for depression.  (Rec. 14.)

In sum, there was objective medical evidence contained in the record on which the ALJ relied in his opinion that contradicted Colon's subjective complaints.  It is the opinion of the Court that the ALJ had substantial evidence to determine that Colon's allegations regarding her limitations lacked credibility.

## IV. CONCLUSION

Based on the foregoing analysis, the Court finds that the Commissioner's decision is supported by substantial evidence, and will therefore be affirmed. The accompanying Order shall issue today.

Dated: 10/27/2006                                    s/Robert B. Kugler
                                                     ROBERT B. KUGLER
                                                     United States District Judge